IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREGORY MURRAY,

    Plaintiff,

v.

CONTRA COSTA COUNTY, *et al*,

    Defendants.

NO. C 08-1539 TEH

ORDER DENYING MOTION FOR NEW TRIAL

This matter came before the Court on July 2, 2012, on Plaintiff Gregory Murray's motion for new trial. Having carefully considered the parties' written and oral arguments, Plaintiff's motion is DENIED for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

This lawsuit arises from Contra Costa County's placement of Baby J, the daughter of Plaintiff Gregory Murray ("Murray" or "Plaintiff"), in foster care in 2006. Murray alleged that Defendant Sandra Andrade ("Defendant" or "Andrade"), a Contra Costa County social worker handling Baby J's case, violated his due process rights. Plaintiff ultimately took two causes of action to trial against Defendant, alleging that Andrade violated his first and fourteenth amendment rights and was therefore liable under 42 U.S.C. section 1983. The violation of Plaintiff's first amendment rights was based on allegations that Andrade delayed or prevented Murray from appearing in court to contest Baby J's adoption and seek custody

of Baby J. The violation of Plaintiff's fourteenth amendment rights was based on allegations that Andrade delayed or prevented Murray from forming a relationship with Baby J.

Baby J was born in February of 2006, in Contra Costa County, California. Due to Baby J's mother testing positive for various drugs upon Baby J's delivery, the County's Children and Family Services bureau ("CFS") initiated involvement to ensure the safety of Baby J. Initially, Baby J remained in her mother's care, through the County's Voluntary Family Maintenance program ("VFM"). During VFM, Mr. Murray contacted CFS and spoke with social worker Lori Castillo, checking on the baby's safety. He purported to be the husband of the mother and possibly the father to the baby.

After a period of VFM, the mother had still not successfully tested drug-free on a consistent basis, and CFS initiated court proceedings in an attempt to promote compliance on the part of Baby J's mother. In July of 2006, proceedings were initiated, and the handling of the case moved from Lori Castillo to Defendant Andrade. Ms. Andrade prepared a juvenile dependency petition and filed it in July of 2006. The mother's condition deteriorated prior to the detention hearing in August of that year, and the child was ultimately ordered placed outside the mother's home. Baby J was placed in foster care.

Mr. Murray, meanwhile, had initiated divorce proceedings in August 2005, before Baby J's birth. He had moved to Florida, and in the Sarasota County Florida dissolution judgment, the court adjudged there to be no children of the marriage. Mr. Murray did not participate in the 2006 dependency court proceedings, but did make arrangements for paternity testing, which revealed, in May 2007, that he was the father of Baby J. Thereafter, he had visits with Baby J, enrolled in parenting classes in Florida, and was ultimately found to be suitable to take sole custody of his daughter. In August 2007, Baby J was placed with Murray and the dependency case was dismissed.

At trial in March of 2012, Murray argued that he was given no notice of the dependency proceedings, in spite of his having provided CFS with his contact information. Andrade responded that he never provided an address, though he did leave a phone number with her office. She contended that no written notice of the proceedings was sent because

1 she did not have an address, but that attempts were made to notify Murray by phone. Murray
2 maintained that he provided both phone and address information, and received no notice of
3 the proceedings in any form. A secondary area of dispute arose around the issue of paternity
4 testing–Murray alleged he was never offered paternity testing nor representation, while
5 Andrade differs, claiming he was offered both testing and a referral for legal representation
6 prior to the dependency proceedings.

7 The case was tried by jury on March 20, 2012, and on March 27, 2012, the jury
8 returned a verdict for the Defendant. Judgment was entered on April 10, 2012, and Plaintiff
9 filed his motion for new trial on May 21, 2012, timely under an extension of time to file
10 granted May 8, 2012.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 59(a), "[a] court may, on motion, grant a new trial to all or some of the issues—and to any party—... (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the Court is "bound by those grounds that have been historically recognized." *Id.*

"Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable's, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)). Further historically recognized grounds include fraud underlying the verdict: the Court may grant a new trial if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 818–819 (9th Cir. 2001) (citation omitted).

3

"A motion for new trial may invoke the court's discretion insofar as it is based on claims that 'the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to [the] party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.' " *Murphy v. City of Long Beach*, 914 F.2d 183, 186 (9th Cir. 1990), quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940).

The Ninth Circuit has held that a new trial may be granted "'only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)). In determining whether a verdict is contrary to the clear weight of the evidence, the Court "has 'the duty ... to weigh the evidence as [the Court] saw it'" and may set aside the verdict even if it is supported by substantial evidence. *Id.* (quoting *Murphy*, 914 F.2d at 187). However, a "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2007).

In making this determination, the court "must view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." *Harper v. City of Los Angeles*, 533 F.3d 1020, 1021 (9th Cir. 2008) (citation omitted). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).

## DISCUSSION

Murray, in his motion, contends that the clear weight of the evidence supports the conclusion that Murray did not receive notice of hearings at which important decisions were

4

made concerning Baby J, nor did he receive court reports to which he was entitled, thus violating his constitutional rights. However, in spite of Murray's provision of testimony in support of each of his points, there remains testimony to the contrary on each of those points. The result is a credibility contest–in order to find for Murray on his motion for a new trial, the Court would have to discount the testimony offered to the contrary, and the Court has not been given any sufficient basis to discount this testimony. As two reasonable conclusions exist on each of the Plaintiff's points, the motion for a new trial must be denied.

*A. The Weakness of Andrade's Testimony Regarding Murray's Notice*

Murray argues that Andrade's testimony regarding any notice she gave Murray of upcoming hearings was inherently weak, citing the fact that she testified at trial that she gave Murray oral notice of several hearings, but failed to document that notice. Ex. 2 at 48, 55-56, 60-64. His contention is that the lack of documentation requires the conclusion that she did not, in fact, give oral notice as she claimed. However, as the testimony contained in the same passages of the transcript demonstrates, Ms. Andrade also testified that she did not always document those instances where she had given phone notice, and further testified that on the one occasion where she does not believe she gave notice, is was due to lack of contact information for Mr. Murray. Ex. 2 at 48, 55-56, 61 (*see also* Ex. 4, 148-49 for Murray's own testimony that he spoke with Andrade a "half dozen" times). While Murray certainly points out grounds which might make a it reasonable for a juror to doubt Andrade's testimony, he has failed to present evidence sufficient to render Andrade's testimony beyond the bounds of reasonable belief. Simply stated, when viewed in the light most favorable to the nonmoving party, the evidence permits two reasonable conclusions, and therefore cannot constitute the basis for a new trial.

*B. The Lack of Document Production At Trial*

The second argument brought by Murray in his motion for a new trial is that Andrade failed to present documentary evidence of the mailing of notice or notices to Murray.

5

1 Andrade, in her response, points out that notice by mail is not required–that telephone notice
2 is sufficient, according to the testimony of Rachel Foster, a program analyst for CFS and
3 CFS's "person most knowledgeable" regarding County practices in the area of CFS.  Ex. 3.
4 Murray did not file a reply brief, nor did he address this point at oral argument.  The relevant
5 inquiry not being sensitive to the question of what form the notice took, but requiring only
6 that notice have been given, the failure to present documentation of notice by mail is not
7 sufficient grounds on which to base a new trial.

*C. Motive On The Part of Andrade*

Finally, Murray argues that Andrade's testimony revealed a bias against Murray, which arose from the impression of Murray given to Andrade by Baby J's mother, and which caused Andrade to avoid allowing Murray the access to the proceedings to which he was constitutionally entitled.  Murray argues that Andrade failed to investigate Murray and therefore was never disabused of her mistaken impression of Murray, and remained willfully blind to both Murray's efforts to come into contact with his child and the rights conferred on him by his status as a presumed father.  Even if the Court were to agree with Murray, however, regarding Andrade's reservations about Murray, the introduction of a potential motive for failure to notify Murray is not sufficient to invalidate Andrade's testimony that she did, in fact, give notice (as discussed above in section A).

Whatever impressions might be formed and assumptions made regarding Andrade's opinion of Murray, the fact remains that evidence was introduced supporting the contention that Andrade provided notice to Murray by phone regarding the Baby J proceedings.  At oral argument, counsel for Murray even acknowledged that a finding of motive in the vein presented by Plaintiff does not foreclose the possibility that Andrade nevertheless gave notice.  This makes reasonable the conclusion that Murray's constitutional rights were not violated, and that he was not deprived of notice of the proceedings involving his daughter, nor hindered in forming a relationship with his child.  In light of the burden imposed on the

6

moving party by Rule 59, and the possibility of differing, yet reasonable, views on this question, the Court cannot grant Murray's motion on this basis.

**CONCLUSION**

For the reasons set forth above, the motion for new trial is DENIED.

**IT IS SO ORDERED.**

Dated: 7/3/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT